Kenneth E. Keller (State Bar No. 71450) kkeller@ksrh.com
Lori L. Holland (State Bar No. 202309) lholland@ksrh.com
Ethan Jacobs (State Bar No. 291838) ejacobs@ksrh.com
**KELLER, SLOAN, ROMAN & HOLLAND LLP**
555 Montgomery St., 17th Fl.
San Francisco, California, 94111
Telephone: (415) 249-8330
Facsimile: (415) 249-8333

JASON R. ERB (SBN 180962) jasonerb@hmausa.com
HYUNDAI MOTOR AMERICA
10550 Talbert Avenue
Fountain Valley, California  92708
Telephone:   (714) 965-3393
Facsimile:   (714) 965-3815

Attorneys for Plaintiffs
HYUNDAI MOTOR AMERICA, INC. and HYUNDAI MOTOR COMPANY

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### (SOUTHERN DIVISION)

| | |
|---|---|
| HYUNDAI MOTOR AMERICA, INC., a California corporation; HYUNDAI MOTOR COMPANY, a Korean corporation<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>PINNACLE GROUP, LLC, a Florida limited liability company, and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No. 8:14-CV-00576 CJC-JPR<br>Honorable Jean P. Rosenbluth<br><br>**DISCOVERY MATTER**<br><br>**DECLARATION OF FRANK FERRARA IN SUPPORT OF SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS'MOTION TO COMPEL DEFENDANT TO REDESIGNATE DOCUMENTS**<br><br>**Date:**　　　March 3, 2016<br>**Time:**　　　10:00 a.m.<br>**Location:**　312 N. Spring Street<br>　　　　　　　Los Angeles, CA 90012<br>**Courtroom:**  A, 8th Floor<br>**Discovery Cutoff:** August 23, 2016<br>**Pre-trial Conference:** October 31, 2016<br>**Trial:** November 8, 2016 |

1. I am the Executive Vice President, Customer Satisfaction, of Hyundai Motor America, Inc. ("HMA"). I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the matters stated herein.

2. I have been employed by HMA since September 1986. Since then, I have been continuously involved in the running of HMA's parts business. In 2001, I was named HMA's Executive Vice President of Parts and, later, in or about 2009, I became Executive Vice President of Parts and Service. Along the way, I have also had executive roles overseeing corporate planning and marketing, but I have remained continuously involved in the operation of HMA's parts business. In or about 2010, my title was changed to Executive Vice President, Customer Satisfaction. My responsibilities as Executive Vice President, Customer Satisfaction of HMA include broad executive oversight for HMA's service and parts operations, including consumer affairs, warranty operations, and service engineering.

3. I understand from HMA's counsel that Pinnacle designated five spreadsheets as Highly Confidential — Attorneys' Eyes Only: (1) PINNACLE00006-30, (2) "2011 sales by month," (3) "2012 Sales by month," (4) "Sales my month 2013," and (5) "Sales my month 2014" (together, the "Pinnacle Spreadsheets").

4. Because of Pinnacle's confidentiality designation, I have not been able to see the spreadsheets myself or to learn any of the information they contain. I understand from HMA's counsel that PINNACLE00006-30 identifies Hyundai part numbers and, for each one, the number of those parts Pinnacle sold in each year between 2010 and 2014. I further understand that the other Pinnacle Spreadsheets show the following information for each year from 2011 to 2014: the Pinnacle customer (*i.e.*, the Hyundai dealer to whom Pinnacle sold the parts), the Hyundai parts sold in each month to that Hyundai dealer, the quantity of those parts sold to that Hyundai dealer, and the purchase price. The specific information contained in these documents has not been provided or revealed to me.

5.  It is no secret or proprietary that Pinnacle has been selling a wide variety of Hyundai parts to Hyundai dealers. In fact, as is discussed in detail below, over the years, Pinnacle has sent to a wide number of Hyundai dealers the specific parts that they offer for sale as well as the price list for those parts. Various Hyundai dealers have forwarded this information to me and others working in the HMA parts department. Therefore, Pinnacle does not treat this information as secret or confidential.

6.  If HMA knows the names of the dealers to whom Pinnacle sells specific parts, the identity of the parts being sold and the specific number of the parts sold, HMA can analyze this data through its computer system and by discussions within HMA of persons knowledgeable about Hyundai's parts, service and warranty.

7.  I understand that HMA's counsel has provided Pinnacle's counsel with the names and job titles of eleven (11) HMA employees who need access to the Pinnacle Spreadsheets in order to investigate HMA's claims and prepare to testify as HMA's Rule 30(b)(6) witnesses. Hyundai's counsel also requested that HMC's 30(b)(6) witnesses and several HMC Legal Department personnel be allowed to access that information as well.

8.  Two of the HMA employees—Eric Sim and myself—need to access the information in the Pinnacle Spreadsheets because we will testify as HMA's 30(b)(6) witnesses. Several of Pinnacle's noticed deposition topics directly implicate the information contained in the Pinnacle Spreadsheets. For example, the deposition topics seek HMA's knowledge of Pinnacle's importation of Hyundai brand auto parts and sale to Hyundai dealers (Nos. 5, 25), dealer or customer complaints about the Hyundai brand auto parts sold by Pinnacle (No. 21), dealer or customer confusion regarding the Hyundai brand auto parts sold by Pinnacle (No. 22), and compatibility, performance, or crash safety issues due to the Hyundai brand auto parts sold by Pinnacle (No. 23).

9.  HMA's witnesses can only be knowledgeable about these topics if we are advised of the dealers to whom Pinnacle has sold parts, the types of parts being sold and the number of the parts. With respect to the warranty issues, we need to understand

which dealers have bought Pinnacle parts, what they were told about the genuineness of the parts, and what warranty either Pinnacle or the dealer has provided to the customer. With respect to the issues of confusion, we need to analyze the information contained in these spreadsheets to try to determine if Pinnacle parts have failed or been returned. HMA needs information about which parts purchased by dealers were Pinnacle parts so that HMA can attempt to match the specific parts sold by Pinnacle to HMA's knowledge about importation of parts, complaints about parts, confusion regarding parts, and performance of parts. Any attempt to match HMA's existing knowledge about these issues to the parts Pinnacle sold will require HMA to consider which parts Pinnacle sold to whom and when—the information in the Pinnacle Spreadsheets.

      10.   In the ordinary course of business, HMA uses a variety of proprietary structured computer databases to store information relative to its business operations. As an example, HMA's AS400 database holds a vast variety of structured data across hundreds of different tables including parts master data such as parts, parts descriptions, pricing, sales, and returns and the service and warranty records for repairs made to Hyundai customer vehicles. This system is ordinarily queried to track, access, or analyze such data using HMA's QMF application, a SQL programming language based proprietary system that interacts with the AS400 database. HMA also has a proprietary Seibel database for its consumer affairs interactions with customers and dealers and several other proprietary service engineering databases that describe field experiences with Hyundai vehicles and parts in the United States market. Each of these databases, in turn, can be accessed and queried in different ways. For each system, one's ability to meaningfully retrieve and analyze data is dependent on the user's experience and familiarity with the organization of the structured data and how it is best queried.

      11.   These computer systems will allow HMA to analyze the information in the Pinnacle Spreadsheets to attempt to determine whether issues with particular parts are or are not related to parts purchased from Pinnacle. In addition to the information in the Pinnacle Spreadsheets, this analysis will require intimate familiarity with these

systems and extensive product, market, and technical expertise to interpret and understand the results.

12. I understand that Pinnacle has contended that Hyundai in-house counsel and/or its outside counsel can be "trained" to use these systems and that it is unnecessary for Hyundai employees who are most familiar with these systems to have access to the information. In my experience, it would not be feasible to train our lawyers on these systems so that this analysis can be performed on the data contained in the Pinnacle spreadsheets. Even Eric Sim and I cannot run this analysis on these systems, and we will require assistance from several other HMA personnel to perform this analysis.

13. In my opinion, there are four employees from the warranty group who have specific knowledge about Hyundai's warranties and who need access to this information so that I can talk to them and become knowledgeable about various topics of the 30(b)(6) deposition and to conduct analysis of HMA's warranty data that may be related to the parts Pinnacle has sold: (1) Brett Helmreich, Senior Group Manager, Warranty, (2) Alex Huang, Assistant Manager, Quality Planning & Analysis, (3) LC Huang, Senior Manager, Dealer Warranty Performance Assurance, and (4) Keith Kaminetzky, Senior Manager, Parts & Service Operations.

14. In addition, I believe that David Vasquez, who is HMA's Assistant Manager, Parts Pricing and is intimately familiar with the parts master portion of the AS400 database and how to effectively query that database, would be critical to further meaningfully analyzing the Pinnacle Spreadsheets for their performance in the field.

15. Bob Shih is the Senior Group Manager, Retail Operations. Within HMA, Mr. Shih and I have the most familiarity with HMA's parts business. His knowledge and expertise will be critical to analyzing the information in the Pinnacle Spreadsheets and to helping me prepare to give 30(b)(6) testimony on topics including those that bear on the information in the Pinnacle Spreadsheets.

16. Three additional HMA personnel in the parts group are also necessary to lend their field expertise to the analysis of the parts at issue in this case: (1) Lien Nguyen, Senior Group Manager, Planning, Systems & Parts, (2) Tiffany Stroupe, Senior Manager, Parts Sales, and (3) Michelle Karajelian, Assistant Manager, Parts Sales.

17. I understand that Pinnacle claims that its reluctance to allow non-lawyers in HMA to view the information in the Pinnacle Spreadsheets stems from past attempts by HMA and HMC to "coerce Pinnacle's best customers to stop buying parts from Pinnacle" or "exert undue pressure on them to get them to stop buying." (D.I. 81-1, at 12; Wilburn Decl. ¶ 9). That concern is groundless. Hyundai does try to sell genuine Hyundai parts to its dealers, but dealers also are allowed to purchase and install non-OEM parts as long as they disclose to customers that the parts are not genuine Hyundai parts. Hyundai does not coerce or attempt to coerce any dealers to stop buying parts from Pinnacle and has not done so.

18. Although Pinnacle has designated the Pinnacle Spreadsheets as Highly Confidential — Attorneys' Eyes Only, Pinnacle does not keep secret which Hyundai brand parts Pinnacle offers for sale or the prices at which Pinnacle sells them. Indeed, Pinnacle frequently sends unsolicited emails with its current price lists to Hyundai dealers as part of its marketing efforts, and does not require that the dealers keep those lists confidential. HMA, in turn, often receives those Pinnacle price lists when dealers forward the emails to Hyundai.

19. I understand that Pinnacle has also designated as Highly Confidential — Attorneys' Eyes Only the identities of the companies that supply Pinnacle with the Hyundai brand auto parts Pinnacle sells as well as all the documents regarding Pinnacle's interactions with those suppliers. HMA's outside counsel identified to Pinnacle's counsel the names and job titles of four HMA employees who need access to that supplier information, and several categories of HMC employees who also will need access to the information.

20. Discovery about the source of the Pinnacle parts—the supplier information—will be critical to understanding how and why the Pinnacle parts are materially different from genuine Hyundai parts. Although I do not now know who Pinnacle's supplier or suppliers are, the details about where Pinnacle obtains its Hyundai brand parts will help explain whether and how there are differences in their manufacturing methods, component materials, quality control standards, and other factors. Pinnacle's 30(b)(6) deposition notice on HMA includes numerous topics directed to HMA's knowledge about those differences. (*See, e.g.*, topic nos. 3 (Pinnacle parts' material differences), 28(d) (basis for statement that Pinnacle parts do not originate with Hyundai in the United States).)

21. As HMA's 30(b)(6) witnesses, Mr. Sim and I need to know the Pinnacle suppliers' identities and view the documents containing information about those suppliers. We will require the assistance of Messrs. Shih and Helmreich to analyze the differences between genuine Hyundai parts and the parts from Pinnacle's suppliers.

I declare under penalty of perjury under the laws of the United States of America and the state of California, that the foregoing is true and correct and that this Declaration was executed on February 25, 2016 at Fountain Valley, California.

*/s/ Frank Ferrara*
Frank Ferrara